**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA**

| | |
|---|---|
| Mel J. and Vivian C. Hill, et al., )<br><br>Plaintiffs, )<br><br>v. )<br><br>Republic of Iraq and Saddam Hussein in his official )<br>capacity as President of the Republic of Iraq, )<br><br>Defendants. ) | Civ. Action No. 1:99CV03346 (TPJ)<br><br>**FILED**<br>JAN 3 1 2001<br>NANCY MAYER WHITTINGTON, CLERK<br>U.S. DISTRICT COURT |

**PLAINTIFFS MOTION TO JOIN SIX ADDITIONAL PLAINTIFF-HOSTAGES
AND SUPPORTING POINTS AND AUTHORITIES**

Plaintiffs Mel J. and Vivian C. Hill et al., by and through undersigned counsel,

move this Court pursuant to Rule 21 of the Federal Rules of Civil Procedure for an order joining

as additional plaintiffs in this action:  Charlene Coutre, Timothy Glenski, Gene Lovas, Myrl Lynn,

B.J. Tinch, and Stuart Williams.

**<u>Procedural Background</u>**

This is an action brought against the Republic of Iraq ("Iraq") and its President,

Saddam Hussein ("Hussein"), under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C.

§§ 1602 *et seq.*, by certain American citizens who were taken hostage by Iraq following its

invasion of the State of Kuwait on August 2, 1990 ("the plaintiff-hostages"), and by their spouses

("the plaintiff-spouses").

Plaintiffs filed the original Complaint in this action on December 15, 1999 and filed

their First Amended Complaint on July 19, 2000.  Defendants failed to respond to either of these

*34*

complaints within the period specified in the FSIA and the Federal Rules of Civil Procedure.
Accordingly, upon plaintiffs' application, the clerk of this Court entered defaults against
defendants Iraq and Hussein on both the original and First Amended Complaint on July 5, 2000
and January 16, 2001, respectively.

Currently pending before this Court are three motions: (1) plaintiffs' motion (filed
June 14, 2000) to certify a class of "plaintiff-hostages," consisting of American citizens who were
present in Iraq or Kuwait at the time of the Iraqi invasion of Kuwait and who were subsequently
detained by Iraq; (2) plaintiffs' motion (filed November 8, 2000) to certify a separate class of
"plaintiff-spouses," consisting of individuals who were the spouses of such plaintiff-hostages; and
(3) plaintiffs' renewed motion for default judgment on the issue of liability only (filed January 19,
2001).[1]

By their present motion, plaintiffs ask this Court to add six additional parties as
plaintiff-hostages in this action.  Like the original plaintiff-hostages, these individuals are U.S.
citizens who were physically present in Iraq or Kuwait between August 2, 1990 through
December 31, 1990 and who, during that period, were detained or seized by defendants.[2]

---

[1]     The original motion for default judgment on the issue of liability was filed on June 14, 2000.  However, that motion has since been mooted as a result of the filing of plaintiffs First Amended Complaint and their renewed motion for entry of default judgment on that amended complaint.

[2]     *See* Declaration of Charlene Coutre, executed on January 28, 2001, ¶¶ 6, 7; Declaration of Timothy Glenski, executed on January 22, 2001, ¶¶ 6, 7; Declaration of Gene Lovas, executed on January 21, 2001, ¶¶ 6, 7; Declaration of Myrl Lynn, executed on January 21, 2001, ¶¶ 6-8; Declaration of B.J. Tinch,, executed on January 31, 2001, ¶ 6; and Declaration of Stuart J. Williams, executed on January 28, 2001, ¶¶ 4-6.  These Declarations are attached as Exhibits A through F.

### Argument

Pursuant to Rule 21 of the Federal Rules of Civil Procedure, additional plaintiffs may be added to an existing action "by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just." This rule "invests the court with broad discretion to grant leave to add or drop a party and * * * the court's decision is guided by the related considerations of timeliness and prejudice to the opposing party." *Health Research Group v. Kennedy*, 82 F.R.D. 21, 29 (D.D.C. 1979). *See also, Benfield v. Mocatta Metals Corp.*, 1992 WL 177154, at *1 (S.D.N.Y. 1992); 7 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1688 (2d ed. 1986) ("The grant or denial of a motion to bring in or to drop a party lies in the discretion of the judge.")

The courts have not hesitated to exercise this discretion where, as here, a "plaintiff in a purported class action * * * move[s] for joinder of additional named plaintiffs who would otherwise be potential class members." *Tirone v. Calderone-Curran Ranches, Inc.*, 1978 WL 1095, at *2 (W.D.N.Y. 1978) (granting plaintiffs' motion to join nine plaintiffs as additional class representatives); *See also Hawkins v. Fulton County*, 95 F.R.D. 88, 90 (N.D. Ga. 1982) (granting motion to join new plaintiffs as additional class representatives in an employment discrimination class action); *Jones v. United Gas Improvement Corp.*, 68 F.R.D. 1, 5 (E.D. Pa. 1975) (granting motion to add new plaintiffs as class representatives).

In the instant case, all of the relevant considerations favor joining the proposed additional plaintiffs. This motion is timely filed as this lawsuit is at a very early stage. Defendants have neither responded in this action, nor has any discovery been taken thus far. *See Hawkins* 95 F.R.D. at 91 (motion to add new plaintiffs held timely where action was still in discovery phase and no prejudice would result to existing parties). As one district court has noted, "the interests

of defendants will not be substantially prejudiced in the early stage of a lawsuit by any delay in adding parties." *De Malherbe v. International Union of Elevator Contractors,* 438 F. Supp. 1121, 1128 (N.D. Cal. 1977).

Indeed, in this case, defendants will not be prejudiced at all. The claims of the original plaintiff-hostages and the proposed additional plaintiff-hostages all arise out of a single policy decision: the decision of defendant Saddam Hussein, acting in his official capacity as President of Iraq, to take U.S. citizens hostage during the 1990 Iraqi invasion of Kuwait in order to compel the United States to refrain from launching an armed attack on Iraq. In view of the fact that claims of the proposed plaintiff-hostages arose from the same course of unlawful conduct as the claims of the original plaintiff-hostages, the defendants in this case will suffer absolutely no prejudice from an order granting their motion to join. *See Jones,* 68 F.R.D. at 5 (motion granted where new plaintiff's claim "poses questions of law and fact in common with those of the underlying action of the other plaintiffs").

In addition, "the interests of judicial economy will be served by adding [the] new plaintiffs." *Hawkins,* 95 F.R.D. at 91. *See also* James Wm. Moore et al., *Moore's Federal Practice* § 21.02[4] (3d ed. 1999). Joinder of the additional plaintiffs will obviate the need for them to file individual actions against these same defendants, in this Court, in which they will assert identical claims to those already at issue in this case. *See Mathis v. Bess,* 761 F. Supp. 1023, 1026 (S.D.N.Y. 1991) ("Courts may join new parties as plaintiffs * * * in order to prevent defendants from being subjected to a multiple lawsuit over the same issues."); *Hawkins,* 95 F.R.D. at 91 ("Denying the proposed Plaintiffs an opportunity to proceed here would only result in the filing of a second, possibly duplic[ative] suit. This Court is duty bound to prevent that sort of duplication of effort which is a waste of judicial resources."); *Tirone,* 1978 WL 1095, at *2

("joinder in the instant case would avoid the possibility of a multiplicity of lawsuits by precluding the individuals now sought to be added as plaintiffs from opting out of any potential class action and filing separate actions").

**Conclusion**

For the foregoing reasons, Plaintiffs' motion to join additional parties should be granted.[3]

Dated:       Washington, D.C.
             January 31, 2001

Respectfully submitted,

Daniel Wolf
D.C. Bar No. 429697
Michael Lieder
D.C. Bar No. 444273
SPRENGER & LANG, PLLC
1614 Twentieth Street, N.W.
Washington, D.C. 20009
(202) 265-8010

Attorneys for Plaintiffs

---

[3.]  Because neither the defendants nor their counsel have yet entered an appearance in this case, counsel for plaintiffs have been unable to contact "opposing counsel" as required by Rule LCvR 7.1(m) of the Rules of the United States District Court for the District of Columbia, to determine whether there is any opposition to the relief being sought.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 31st day of January, 2001, a copy of the foregoing Plaintiffs' renewed motion to join additional plaintiffs, memorandum of points and authorities in support and attachments thereto were mailed, postage prepaid, through the U.S. Postal Service to the following:

> Ambassador Saeed Hassan
> Permanent Representative of Iraq to the United Nations
> 14 East 79th Street
> New York, NY 10021
>
> Mr. Akram Alduri
> Chief of Iraqi Mission
> Embassay of Algeria - Section on Iraq
> 1801 P Street, N.W.
> Washington, D.C. 20036
>
> H.E. Saddam Hussein
> President of the Republic of Iraq
> Republic of Iraq
> Baghdad, Iraq
>
> H.E. Mohammad Al-Sahaf
> Minister of Foreign Affairs
> Ministry of Foreign Affairs
> Baghdad, Iraq

_Melissa Vanouse_

Melissa A. Vanouse

*A*

## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF COLUMBIA

Mel J. and Vivian C. Hill, et al.,                    )
                                                      )
                    Plaintiffs,                       )
                                                      )        Civ. Action No. 1:99CV03346 (TPJ)
        v.                                            )
                                                      )        **FILED**
Republic of Iraq and Saddam Hussein in his official   )
capacity as President of the Republic of Iraq,        )        JAN 3 1 2001
                                                      )
                    Defendants.                       )        NANCY MAYER WHITTINGTON, CLERK
                                                      )        U.S. DISTRICT COURT

### DECLARATION OF CHARLENE T. COUTRE

Charlene T. Coutre, under penalty of perjury, declares:

      1.    I live at 480 Bison Drive, Boulder, Colorado 80302. I was born on June 16, 1944, in Chicago, Illinois.

      2.    In 1990, I worked for Gulf Bank of Kuwait as chief operations officer. Before August 1990, I had resided in Kuwait for approximately 10 months - since the fall of 1989.

      3.    From the fall of 1989 until shortly before the August 1990 Iraqi invasion of Kuwait, I was able to move about Kuwait with relative freedom, and could have left Kuwait at any time. This situation changed on August 2, 1990, when Iraqi armed forces invaded Kuwait.

      4.    Soon after the invasion began, Saddam Hussein, the President of the Republic of Iraq, issued an order prohibiting all U.S. citizens from leaving either Iraq or Kuwait.

      5.    I was living at the Kuwait Regency Hotel at the time of the invasion. I was informed that the Kuwaiti borders were closed and that I was not permitted to leave the country

W6-Coutre declaration.DOC

2

6.    In the middle of the night on approximately August 19, 1990, Iraqi troops took me into custody, boarded me on a bus, and transported me to a strategic site in Kuwait. At the end of November, I was transported to Iraq.   By detaining me at a strategic site, the Iraqi forces used me as a "human shield" to deter the United States from launching an armed attack against Iraq.

7.    I remained in Iraq until approximately December 11, 1990, when, pursuant to a later order by Saddam Hussein, I was permitted to leave Iraq and return to the United States.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on January 28, 2001.

Charlene T. Coutre
_____
Charlene T. Coutre

W6-Coutre declaration.DOC

*B*

## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF COLUMBIA

|  |  |
|---|---|
| Mel J. and Vivian C. Hill, et al., ) | |
| ) | |
| Plaintiffs, ) | Civ. Action No. 1:99CV03346 (TPJ) |
| ) | |
| v. ) | |
| ) | **FILED** |
| Republic of Iraq and Saddam Hussein in his official ) | |
| capacity as President of the Republic of Iraq, ) | **JAN 3 1 2001** |
| ) | |
| Defendants. ) | **NANCY MAYER WHITTINGTON, CLERK** |
| ) | **U.S. DISTRICT COURT** |

### DECLARATION OF TIMOTHY GLENSKI

Timothy Glenski, under penalty of perjury, declares:

1.      I reside at 943 Mohr Lane, Concord, California 94518.

2.      I was born on March 12, 1957 in Kansas City, Missouri.

3.      In 1990, I was employed by Bechtel Corporation as a computer engineer in Baghdad.  Before August 1990, I had resided in Iraq for approximately sixteen months since approximately April 16, 1989.

4.      From about April 16, 1989 until shortly before the August 1990 Iraqi invasion of Kuwait, I was able to move about Iraq with relative freedom, and could have left Iraq at anytime.  This situation changed on August 2, 1990, when Iraqi armed forces invaded Kuwait.

5.      Shortly after the invasion, Saddam Hussein, the President of the Republic of Iraq, issued an order prohibiting all U.S. citizens from leaving either Iraq or Kuwait.  Pursuant to President Hussein's directive, all American citizens were required to congregate at specified locations in Kuwait and Iraq and were detained at those and other locations.  American citizens

2

who were found outside these locations were subject to seizure by Iraqi security forces and

forced relocation to military installations and other strategic sites where they were detained as

"human shields" in order to prevent allied air attack.

      6.    As a result of these directives, I was required to stay at a hotel where I had

previously been residing.  After approximately several weeks, officials of U.S. Embassy in

Baghdad directed me to take refuge at the residence of U.S. Ambassador, where I was forced to

remain.  On approximately November 12, 1990, great personal risk to myself and others, I

escaped from Iraq by illegally crossing the Jordanian border.


      I declare under penalty of perjury that the foregoing is true and correct.

Executed on January 22, 2001.


                           Timothy Glenski

C

## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Mel J. and Vivian C. Hill, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Civ. Action No. 1:99CV03346 (TPJ) |
| v. | ) | |
| | ) | **FILED** |
| Republic of Iraq and Saddam Hussein in his official | ) | |
| capacity as President of the Republic of Iraq, | ) | JAN 3 1 2001 |
| | ) | |
| Defendants. | ) | NANCY MAYER WHITTINGTON, CLERK |
| | ) | U.S. DISTRICT COURT |

### AFFIDAVIT OF GENE LOVAS

Gene Lovas, under penalty of perjury declares:

1.     My name is Gene Lovas.  I live at 14531 Golders Green Lane in Westminster, California.

2.     I am a natural born citizen of the United States.   I was born on January 31, 1946 in Queens, New York.

3.     In 1990, I worked for the Bechtel Corporation as a Construction Superintendent.  By August 1990, I had been in Iraq for over a year -- since May 1989 -- working at Bechtel's offices in Baghdad.

4.     From May 1989 until shortly before the August 1990 Iraqi invasion of Kuwait, I was able to move freely about Baghdad and could have left Iraq at anytime.  This situation changed on August 2, 1990, when Iraqi armed forces invaded Kuwait.

5.     Shortly after the invasion, Saddam Hussein, the President of the Republic of Iraq, issued an order prohibiting all U.S. citizens from leaving either Iraq or Kuwait. Pursuant to President Hussein's directive, all American citizens were required to congregate at specified locations in Kuwait and Iraq and were detained at those and other locations.  American citizens who were found outside these locations were subject to seizure by Iraqi security forces and forced relocation to military installations and other strategic sites where they were detained as "human shields" in order to prevent allied air attack.

6.     In light of the Iraq directives, I was required to stay at the Sheraton Hotel where I had been previously residing.  After approximately two weeks, I relocated to the U.S. Ambassador's residence in Baghdad, along with a number of other U.S. citizens.

7.     Pursuant to a later order by Saddam Hussein, on December 10, 1990, after more than four months of detention in Iraq, I was permitted to leave the country and return to the United States.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on January _21_, 2001

_Gene P. Lovas_
Gene Lovas



# UNITED STATES DISTRICT COURT FOR THE
# DISTRICT OF COLUMBIA

| | |
|---|---|
| Mel J. and Vivian C. Hill, et al., <br><br> Plaintiffs, <br><br> v. <br><br> Republic of Iraq and Saddam Hussein in his official capacity as President of the Republic of Iraq, <br><br> Defendants. | )<br>)<br>)<br>)<br>)     Civ. Action No. 1:99CV03346 (TPJ)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**FILED**

JAN 3 1 2001

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

## DECLARATION OF MYRL LYNN

Myrl Lynn, under penalty of perjury, declares:

1.     I reside at 611 4th Street in Glasgow, Missouri.  I was born in Glasgow on July 29, 1927.

2.     In 1990, I was employed by Bechtel Corporation as a manager of camp services in Bagdad.  By August 1990, I had been in Iraq for approximately one year -- since about August 1989.

3.     From about August 1989 until shortly before the August 1990 Iraqi invasion of Kuwait, I was able to move about Iraq with relative freedom, and could have left Iraq at anytime.  This situation changed on August 2, 1990, when Iraqi armed forces invaded Kuwait.

4.     Shortly after the invasion, Saddam Hussein, the President of the Republic of Iraq, issued an order prohibiting all U.S. citizens from leaving either Iraq or Kuwait.  Pursuant to President Hussein's directive, all American citizens were required to congregate at specified locations in Kuwait and Iraq and were detained at those and other locations.  American citizens

2

who were found outside these locations were subject to seizure by Iraqi security forces and

forced relocation to military installations and other strategic sites where they were detained as

"human shields" in order to prevent allied air attack.

     5.    As a result of these directives, I was required to stay at the Sheraton Hotel

where I had previously been residing.  After approximately one month, I sought refuge at the

U.S. Ambassador's residence in Baghdad.  I was forced to remain at the residence until

approximately November 25, 1990, when pursuant to a later directive from Saddam Hussein, I

was permitted to leave Iraq and return to the United States.


     I declare under penalty of perjury that the foregoing is true and correct.

Executed on January 21, 2001.


Myrl Lynn



**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**

Mel J. and Vivian C. Hill, et al.,

         Plaintiffs,

         v.

Republic of Iraq and Saddam Hussein in his official capacity as President of the Republic of Iraq,

         Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

Civ. Action No. 1:99CV03346 (TPJ)

**DECLARATION OF B.J. TINCH**

B.J. Tinch, under penalty of perjury, declares:

1.    I live at Cortijo: De Calchanda #11, Sitio De Calahanda, Mijas Costa, Espana 29647. I was born on August 30, 1936 in Sunbright, Tennessee.

2.    I am a natural born citizen of the United States.

3.    From 1983 through 1990, I worked, in Kuwait, for Santa Fe International as a drilling maintenance foreman.

4.    Until shortly before the August 1990 Iraqi invasion of Kuwait, I was able to move about Kuwait with relative freedom and could have left Kuwait at anytime. This situation changed on August 2, 1990, when Iraqi armed forces invaded Kuwait.

5.    Soon after the invasion, Saddam Hussein, the President of the Republic of Iraq, issued an order prohibiting all U.S. citizens from leaving either Iraq or Kuwait. Pursuant to President Hussein's directive, all American citizens were required to congregate at specified

W6-Tinch declaration

2

locations in Kuwait and Iraq and were detained at those and other locations. American citizens who were found outside these locations were subject to seizure by Iraqi security forces and forced relocation to military installations and other strategic sites where they were detained as "human shields" in order to prevent allied air attack.

6.     As a result of this order, I was taken captive by the Iraqi Army on August 9, 1990. I was placed on a bus under armed guard and taken to an army camp near Bassa. On August 4, 1990, I was flown to Baghdad. Immediately after arriving Iraq, I was taken to a chemical plant near the Syrian border where I was used as a human shield against allied attack.

7.     Subsequently, I was moved to different strategic locations throughout Iraq approximately every two weeks until my release on December 10, 1990, when, pursuant to a later order by Saddam Hussein, I was permitted to leave Iraq.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on January 31, 2001.

B.J. Tinch
_____
B.J. Tinch



## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF COLUMBIA

|  |  |
|---|---|
| Mel J. and Vivian C. Hill, et al., | ) |
| Plaintiffs, | ) |
| v. | ) Civ. Action No. 1:99CV03346 (TPJ) |
| Republic of Iraq and Saddam Hussein in his official capacity as President of the Republic of Iraq, | ) |
| Defendants. | ) |

**FILED**

JAN 3 1 2001

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

### DECLARATION OF STUART J. WILLIAMS

Stuart J. Williams, under penalty of perjury, declares:

1.    I live at 480 Bison Drive, Boulder, Colorado 80302. I was born on September 22, 1944 in West Palm Beach, Florida.

2.    In 1990, I worked for Gulf Bank of Kuwait as its chief executive officer. Before August 1990, I had resided in Kuwait for approximately 10 months - since the fall of 1989.

3.    From the fall of 1989 until shortly before the August 1990 Iraqi invasion of Kuwait, I was able to move about Kuwait with relative freedom, and could have left Kuwait at any time. This situation changed on August 2, 1990, when Iraqi armed forces invaded Kuwait.

4.    Soon after the invasion began, Saddam Hussein, the President of the Republic of Iraq, issued an order prohibiting all U.S. citizens from leaving either Iraq or Kuwait.

5.    I was living at the Kuwait Regency Hotel at the time of the invasion. I was informed that the Kuwaiti borders were closed and that I was not permitted to leave the country.

W6-williams declaration1.DOC

6.      In the middle of the night, on approximately August 19, 1990, Iraqi troops took me into custody, boarded me on a bus and transported me to a strategic site in Kuwait.  At the end of November, I was transported to a strategic site in Iraq.  By detaining me at strategic sites in Kuwait and in Iraq, Iraqi forces used me as a "human shield" to deter the United States from launching an armed attack against Iraq.

7.      I remained in Iraq until approximately December 11, 1990, when, pursuant to a later order by Saddam Hussein, I was permitted to leave Iraq and return to the United States.


I declare under penalty of perjury that the foregoing is true and correct.

Executed on January _28_, 2001.



_Stuart J. William_
Stuart J. Williams