# UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF COLUMBIA

|  |  |
|---|---|
| Mel J. and Vivian C. Hill, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>Republic of Iraq and Saddam Hussein in his official capacity as President of the Republic of Iraq,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Civ. Action No. 1:99CV03346 (TPJ)

**FILED**

**JUN 2 8 2001**

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

## PLAINTIFFS' MOTION TO JOIN
### EIGHTEEN ADDITIONAL PARTIES AS PLAINTIFFS

Plaintiffs Mel J. and Vivian C. Hill et al., by and through undersigned counsel, move this Court pursuant to Rule 21 of the Federal Rules of Civil Procedure for an order joining as additional plaintiffs in this action:  Bharati J. Bhatt, Jan Bhatt, Wilda Carr, Gary Wade Duncan, Bobby L. Gill, Clyde A. Jesse, Margaret M. Jesse, Gordon W. Johnson, Allan L. Lawson, Loretta M. Lawson, Khadijah S. Mills, William E. Mills, Billie E. Nelson, Jacqueline Nelson, Bill F. Rodebush, Betty Jane Seago, Debby Willis and Jerry Willis.

On May 24, 2001, this Court ordered that additional parties may be joined in this action as plaintiffs by filing a motion to join, pursuant to Fed. R. Civ. P. 21, together with a declaration containing certain specified information about each person who seeks to be joined.[1]  By their present motion, plaintiffs ask this Court to add eighteen new parties to this action as "plaintiff-

---

[1]  Under the Court's order, the information contained in the declaration of a person who wishes to be joined must include, at a minimum, the following: (a) his/her permanent place of residence; (b) a statement that either he/she or his/her spouse was at the time of the Iraqi invasion of Kuwait on August 2, 1990 an American citizen who was physically present in Iraq or Kuwait; (c) a statement that he/she or his/her spouse was subsequently taken hostage by defendants; and (d) the date upon which he/she or his/her spouse was released from detention.



hostages" by virtue of their having been American citizens who were taken hostage by Iraq following its invasion of Kuwait on August 2, 1990, and/or "plaintiff-spouses" by virtue of their having been married to an American citizen who was taken hostage by Iraq.[2]

Each of the declarations accompanying this motion contains the information set forth in this Court's order of May 24, 2001. *See* note 2 *supra.* Thus, in accordance with paragraph 2 of that order, this motion should be deemed granted as to all eighteen of the individuals named herein as of ten days of this date, unless it is opposed by Defendants prior thereto.[3]

---

[2]    Eleven of the individuals who are the subject of this motion seek to be joined as a plaintiff-hostage. *See* Declaration of Jan Bhatt, executed on May 4, 2001, ¶¶ 3-5; Declaration of Gary Wade Duncan, executed on April 27, 2001, ¶¶ 2, 5; Declaration of Bobby L. Gill, executed on May 30, 2001, ¶¶ 2, 4; Declaration of Clyde A. Jesse, executed on June 11, 2001, ¶¶ 2, 4, 5; executed on June 11, 2001, ¶¶ 2, 4-6; Declaration of Gordon W. Johnson, executed on June 11, 2001, ¶¶ 2, 4, 5; Declaration of Allan Lawson, executed on May 14, 2001, ¶¶ 2, 4, 5; Declaration of Khadijah S. Mills, executed on June 21, 2001, ¶¶ 2, 4-6; Declaration of  William E. Mills, executed on June 21, 2001, ¶¶ 2, 4-6; Declaration of Billie E. Nelson, executed on June 13, 2001, ¶¶ 2, 4-6; Declaration of Bill F. Rodebush, executed on April 27, 2001, ¶¶ 2, 4-6; and Declaration of Jerry Willis, executed on June 12, 2001, ¶¶ 2, 5-7. These Declarations are attached hereto as Exhibits A through K.  Three of the individuals who are the subject of this motion seek to be joined as a plaintiff-spouse. *See* Declaration of Bharati J. Bhatt, executed on May 24, 2001, ¶ 2; Declaration of Loretta M. Lawson, executed on May 14, 2001, ¶ 3; and Declaration of Betty Jane Seago, executed on June 12, 2001, ¶ 2; These Declarations are attached hereto as Exhibits L through N. The other four individuals who are the subject of this motion seek to be joined both as a plaintiff-hostage and a plaintiff-spouse, having been taken hostage themselves and having been married to a plaintiff-hostage who remained in captivity after their release. *See* Declaration of Wilda Carr, executed on June 20, 2001, ¶¶ 2, 4-6; Declaration of Margaret M. Jesse; Declaration of Jacqueline Nelson, executed on June 13, 2001, ¶¶ 2, 4-7; Declaration of Debby Willis, executed on June 12, 2001, ¶¶ 2, 5-7. These Declarations are attached hereto as Exhibits O through R.

[3]    In a previous order, dated May 1, 2001, this Court granted plaintiffs' three motions [34], [36] and [37], dated January 31, 2001, April 10, 2001, and April 24, 2001, to join six, thirteen and seventeen additional plaintiffs, respectively, to this action.

## CONCLUSION

For the aforementioned reasons, plaintiffs' motion to join eighteen different plaintiffs should be deemed granted as of July 9, 2001.[4] In view of its order dated May 24, 2001, this Court need not issue any separate order to bring about this result.

Dated:      Washington, D.C.
              June 28, 2001

Respectfully submitted,

Daniel Wolf
D.C. Bar No. 429697
Michael Lieder
D.C. Bar No. 444273
SPRENGER & LANG, PLLC
1614 Twentieth Street, N.W.
Washington, D.C. 20009
(202) 265-8010

Attorneys for Plaintiffs

---

[4] Because neither the defendants nor their counsel have yet entered an appearance in this case, counsel for plaintiffs have been unable to contact "opposing counsel" as required by rule LCvR 7.1 (m) of the Rules of the United States District Court for the District of Columbia, to determine whether there is any opposition to the relief being sought.

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this 28th day of June, 2001, a copy of the attached Plaintiffs' Motion to Join Eighteen Additional Plaintiffs was mailed, postage prepaid, through the U.S. Postal Service to the following:

> Ambassador Saeed Hassan
> Permanent Representative of Iraq to the United Nations
> 14 East 79th Street
> New York, NY 10021
>
> Mr. Akram Alduri
> Chief of Iraqi Mission
> Embassy of Algeria - Section on Iraq
> 1801 P Street, N.W.
> Washington, D.C. 20036
>
> H.E. Saddam Hussein
> President of the Republic of Iraq
> Republic of Iraq
> Baghdad, Iraq
>
> H.E. Mohammad Al-Sahaf
> Minister of Foreign Affairs
> Ministry of Foreign Affairs
> Baghdad, Iraq

Thomas Benoit



## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF COLUMBIA

| | |
|---|---|
| Mel J. and Vivian C. Hill, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) Civ. Action No. 1:99CV03346 (TPJ) |
| v. | ) |
| | ) |
| Republic of Iraq and Saddam Hussein in | ) |
| his official capacity as President of the | ) |
| Republic of Iraq, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## DECLARATION OF JAN BHATT

Jan Bhatt, under penalty of perjury, declares:

1.      My current residence is CASA XS, Flat DG-1, 43/2 Manapakkam Road, Manapakkam, Chennai 600116, India.  I was born in India on December 27, 1945. I became a naturalized U.S. citizen on September 28, 1982.

2.      On the morning of August 2, 1990, Iraqi armed forces invaded Kuwait.  When the invasion began, Saddam Hussein, the President of the Republic of Iraq, issued an order prohibiting all U.S. citizens from leaving either Iraq or Kuwait. Pursuant to President Hussein's directive, all American citizens were required to congregate at specified locations in Kuwait and Iraq and were detained at those and other locations.  American citizens who were found outside these locations were subject to seizure by Iraqi security forces, and forcibly relocated to military installations and other strategic sites where they were detained as "human shields" in order to prevent allied air attack.

FILED

JUN 2 8 2001

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

3.    On August 2 1990 – the day that Iraqi armed forces invaded Kuwait – I was on a British Airways flight that landed in Kuwait City.  Upon landing, I was seized by Iraqi security forces and taken to a nearby hotel in Kuwait City, where I was held for 5 days.

4.    Subsequently, on or around August 7, 1990, I was boarded on a bus and driven to Basra, where I was boarded on a train bound for Baghdad.  Upon arrival in Baghdad, I was taken to the Al' Rasheed Hotel and detained there for the next week.  I was subsequently taken to several strategic sites where I was used as a "human shield" to deter allied air attack.  The first of these sites was a chemical facility in Al' Quaim near the Syrian border, where I was held for approximately twelve days from August 16 to August 28.  I was next taken to the biological facility at Madan outside of Baghdad, where I was detained from August 28 until October 9.  Finally, at 2:00 a.m. on the morning of October 9, I was transported to a military complex in Ameriya outside of Baghdad, where I was confined for the duration of the crisis.

5.    I was held hostage in Iraq until approximately December 9, 1990, when, pursuant to an order of Saddam Hussein, I was permitted to leave Iraq and return to the United States.

I declare under penalty of perjury that the foregoing is true and correct. Executed on May 2𝑓, 2001.

Jan Bhatt



UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

Mel J. and Vivian C. Hill, et al.,     )
         )
         )
       Plaintiffs,   )
         )   Civ. Action No. 1:99CV03346 (TPJ)
     v.      )
         )
Republic of Iraq and Saddam Hussein in his official )
capacity as President of the Republic of Iraq,  )
         )
       Defendants.   )
         )

## DECLARATION OF GARY WADE DUNCAN

Gary Wade Duncan, under penalty of perjury, declares:

1.    I reside in Tyler, Texas. I was born in Eldorado, Arkansas on April 18, 1949.

2.    In 1990, I was employed by Howe-Baker Engineers, Inc. as an operations specialist. In May of that year, I was assigned to a project at an air separation plant in Baquba, Iraq.

3.    From May 1989 until shortly before the August 1990 Iraqi invasion of Kuwait, I was able to move about Iraq with relative freedom, and could have left Iraq at anytime. This situation changed on August 2, 1990, when Iraqi armed forces invaded Kuwait.

4.    Shortly after the invasion, Saddam Hussein, the President of the Republic of Iraq, issued an order prohibiting all U.S. citizens from leaving either Iraq or Kuwait. Pursuant to President Hussein's directive, all American citizens were required to congregate at specified locations in Kuwait and Iraq and were detained at those and other locations. American citizens who were found outside these locations were subject to seizure by Iraqi security forces and were

FILED

JUN 2 8 2001

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

forcibly relocated to military installations and other strategic sites, where they were detained as "human shields" in order to prevent allied air attack.

       5.      At the time of the invasion, I was staying at the Novetel Hotel in Baghdad. On approximately August 18, at about 2:00 A.M, I received a telephone call from a U.S. Embassy official who advised me to relocate immediately to the U.S. Ambassador's residence because Iraqi security forces were arresting American and British nationals throughout Baghdad. Following this advice, I left for the Ambassador's residence with nothing more than the clothes on my back.  I was forced to remain at that residence until approximately December 9, 1990, when pursuant to a later directive from President Hussein, I was permitted to leave Iraq and return to the United States.

      I declare under penalty of perjury that the foregoing is true and correct.

Executed on April  27 , 2001.

Gary Wade Duncan

## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF COLUMBIA

| | |
|---|---|
| Mel J. and Vivian C. Hill, et al.,     ) | |
|     ) | |
|     ) | |
|       Plaintiffs,     ) | |
|     ) | Civ. Action No. 1:99CV03346 (TPJ) |
|     v.     ) | |
|     ) | |
| Republic of Iraq and Saddam Hussein     ) | |
| in his official capacity as President of the     ) | |
| Republic of Iraq,     ) | |
|     ) | |
|       Defendants.     ) | |

## DECLARATION OF BOBBY L. GILL

Bobby L. Gill, under penalty of perjury, declares:

1.      I reside at 9550 Dyer, Apt. N. 1127 in El Paso, Texas.  I was born in Jackson, Tennessee on August 28, 1944.

2.      At the time of the Iraqi invasion of Kuwait on August 2, 1990, I had been working in that country for two weeks as a field engineer for Litton Data Systems, Inc.  During that period, I was able to move freely about Kuwait and could have left the country at any time.

4.      On the day of the invasion, Iraqi forces occupied the Sheraton Hotel where I was staying in downtown Kuwait City.  For the next two days, I was confined to my room at the hotel.  On August 4, Iraqi forces ordered me into a van and transported me to Iraq.  After being held overnight in a military camp, I was taken to Baghdad and brought to the Al' Rashid Hotel where I was detained for about eleven days. On August 16, I was taken to a phosphate plant in Al' Quaim near the Syrian border,

FILED

JUN 2 8 2001

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

where I was detained for twelve days as a human shield to deter allied air attack. Subsequently, on August 28, I was brought back to Baghdad and held at the Al' Monsour Hotel for two days. On August 30, I was transported to the Nasiriyah Power Plant. After being held at that site for one day, I was transported to the Hartha Power Plant near Basra, where I was confined as a human shield for the remainder of the crisis.

     5.    I was held hostage in Iraq until approximately December 11, 1990, when, pursuant to an order of Saddam Hussein, I was permitted to leave Iraq and return to the United States.

     I declare under penalty of perjury that the foregoing is true and correct. Executed on May 30, 2001.

                                  Bobby L. Gill



## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Mel J. and Vivian C. Hill, et al.,<br><br>                                    Plaintiffs,<br><br>                      v.<br><br>Republic of Iraq and Saddam Hussein in his official<br>capacity as President of the Republic of Iraq,<br><br>                                    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Civ. Action No. 1:99CV03346 (TPJ)

### DECLARATION OF CLYDE A. JESSE

Clyde A. Jesse, under penalty of perjury, declares:

1.      I live in 45 Beacon Bay in Lakemoor, Illinois, 60050.  I was born on December 20, 1934 in Beaver Dam, Wisconsin.

2.      My wife, Margaret M. Jesse, and I arrived in Kuwait in December 1987, where I was employed as a senior logistics engineer with the Kuwaiti Ministry of Defense. During the two and a half that we lived in Kuwait prior to August 1990, we could move freely about the country and could have left at any time.

3.      This situation changed on August 2, 1990, when Iraqi forces invaded Kuwait.  Shortly thereafter, Saddam Hussein, the President of the Republic of Iraq, issued an order prohibiting all U.S. citizens from leaving either Iraq or Kuwait.  Pursuant to President Hussein's directive, all American citizens were required to congregate at specified locations in Kuwait and Iraq, and were detained at those and other locations.  American citizens who were found outside these locations were subject to seizure by Iraqi security forces and were forcibly

FILED

JUN 2 8 2001

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

relocated to military installations and other strategic sites, where they were detained as "human shields" in order to prevent allied air attack.

4.      Within hours of the invasion, Iraqi forces took up positions around the Messella Beach Hotel, where my wife and I were living in Kuwait City.  For the next two days, Iraqi forces confined us to our apartment in the hotel.  Then, on August 4, they transported us via bus to Basra and, from there, by overnight train to Baghdad, where we were held at the Al-Rasheed hotel for about ten days.  Subsequently, in mid-August, we were bussed to a chemical plant in Al'Quem where we were detained as "human shields."  About three weeks later, following President Hussein's order releasing American women and children, my wife left the country.

5.      I, however, was held hostage in Iraq until approximately November 29, 1990, when, pursuant to a later order by Saddam Hussein, I was permitted to leave Iraq and return to the United States.

I declare under penalty of perjury that the foregoing is true and correct. Executed on June 11, 2001.

Clyde A. Jesse



**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA**

| | |
|---|---|
| Mel J. and Vivian C. Hill, et al.,<br><br>                  Plaintiffs,<br><br>              v.<br><br>Republic of Iraq and Saddam Hussein,<br>in his official capacity as President of the<br>Republic of Iraq,<br><br>                Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    Civ. Action No. 1:99CV03346 (TPJ) |

## DECLARATION OF GORDON W. JOHNSON

Gordon W. Johnson, under penalty of perjury, declares:

1.      I reside at 4851 W. Carol Ave. in Glendale, Arizona, 85302.  I was born in Slaton, Texas on November 3, 1937.

2.      On August 2, 1990, Iraqi forces invaded Kuwait.  By the time of the invasion, I had been in Kuwait for a year and a half, having arrived in that country in June 1988.  During that period I was employed as a landscape consultant for Kuwait Consult, Ltd. assigned to a project with the Kuwaiti Public Authority for Agricultural Affairs.  From the moment of my arrival until the day of the Iraqi invasion, I was able to move freely about Kuwait and could have left the country at any time.

3.      Shortly after the invasion, Saddam Hussein, the President of the Republic of Iraq, issued an order prohibiting all U.S. citizens from leaving either Iraq or Kuwait.  Pursuant to President Hussein's directive, all American citizens were required to congregate at specified locations in Kuwait and Iraq and were confined to those and other

FILED

JUN 2 8 2001

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

locations. American citizens who were found outside these locations were subject to both seizure by Iraqi security forces, and forcibly relocated to military installations and other strategic sites where they were detained as "human shields" in order to prevent allied air attack.

4.      On the morning of the invasion, I was on my way to work in downtown Kuwait. I managed to make it to the office, where I spent the day before making my way back to my room at the Ramada Hotel. By midnight, the Iraqi forces occupied the hotel and held me there against my will for the next several days. On approximately August 6, Iraqi authorities loaded me on a bus and transported me to Baghdad along with about a dozen other foreign nationals. Upon arrival in Baghdad, I was taken to the Al-Rasheed Hotel and confined there for the next 10 days. On approximately August 16, I was taken to the Al-Quaim State Phosphate Complex in Al-Quaim near the Syrian border, where I was held for two weeks and used as a "human shield" to deter allied air attack. On or about August 30, I was brought back to Baghdad and taken to the Al-Monsour Hotel. After one night's stay at the hotel, I was taken to a location about 40 miles south of Baghdad and detained as a "human shield" at a government complex for the remainder of the crisis.

5.      I was held hostage in Iraq until approximately December 9, 1990, when, pursuant to an order of Saddam Hussein, I was permitted to leave Iraq and return to the United States.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on June _11_, 2001.

_Gordon W. Johnson_
Gordon W. Johnson



# UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF COLUMBIA

Mel J. and Vivian C. Hill, et al.,　　　　)
　　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　Plaintiffs,　　　　)
　　　　　　　　　　　　　　　　　　　)　　Civ. Action No. 1:99CV03346 (TPJ)
　　　　　　　　　　v.　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
Republic of Iraq and Saddam Hussein,　　)
in his official capacity as President of the　)
Republic of Iraq,　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　Defendants.　　　 )

## DECLARATION OF ALLAN L. LAWSON

Allan L. Lawson, under penalty of perjury, declares:

1.　　　I reside at 246 Elkins Lake in Huntsville, Texas, 77340.  I was born in Minneapolis, Minnesota on March 27, 1935.

2.　　　On August 2, 1990, Iraqi forces invaded Kuwait.  At the time of the invasion, I was in the second week of a four-week rotation working in Kuwait as a contract drilling fluids engineer for Dresser Industries.  I was assigned to a project at the Santa Fe Drilling Rig No. 11, drilling for the Kuwait Oil Co. in the Raqah Oil Field, located in Northwest Kuwait.

3.　　　Shortly after the invasion, Saddam Hussein, the President of the Republic of Iraq, issued an order prohibiting all U.S. citizens from leaving either Iraq or Kuwait.  Pursuant to President Hussein's directive, all American citizens were required to congregate at specified locations in Kuwait and Iraq and were confined to those and other locations.  American citizens who were found outside these locations were subject to both

FILED

JUN 2 8 2001

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

seizure by Iraqi security forces, and forcibly relocated to military installations and other strategic sites where they were detained as "human shields" in order to prevent allied air attack.

4.    On the morning of the invasion, Iraqi forces seized me at gunpoint and transported me by bus to a prisoner of war camp in southern Iraq and, later that same day, to a military base, where I was detained overnight.  The next day, I was taken to the Sheraton Hotel in Basra.  After spending the evening at that hotel, I was loaded onto a military aircraft and flown to Baghdad on August 4.  Upon arrival in Baghdad, I was brought to the Al' Rashid Hotel and confined there for the next 12 days.  I was subsequently taken to two separate strategic sites where I was used as a "human shield" to deter allied air attack.  The first of these sites was the Al' Quaim State Phosphate Complex in Al' Quaim near the Syrian border, where I was held from August 16 to about August 30.  I was next taken to the Tahji Machine and Foundry complex in Tahji, Iraq and confined at that site until December 8.  On that date, I was brought back to Baghdad and taken to the Al' Monsour Milla Hotel.

5.    I was held hostage in Iraq until approximately December 8, 1990, when, pursuant to an order of Saddam Hussein, I was permitted to leave Iraq and return to the United States.

I declare under penalty of perjury that the foregoing is true and correct.
Executed on May 14, 2001.

Allan L. Lawson

G

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Mel J. and Vivian C. Hill, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) Civ. Action No. 1:99CV03346 |
| (TPJ) | ) |
| v. | ) |
| | ) |
| Republic of Iraq and Saddam Hussein in his official | ) |
| capacity as President of the Republic of Iraq, | ) |
| | ) |
| Defendants. | ) |
| | ) |

**DECLARATION OF KHADIJAH S. MILLS**

Khadijah S. Mills, under penalty of perjury, declares:

1.     I live at 1212 Wood Hollow Drive, Apt. 15202, Houston, Texas,

77057.  I was born in Tehran, Iran on March 21, 1931 and became a naturalized U.S.

citizen in 1957.

2.     In February 1988, my husband, William E. Mills and I arrived in

Kuwait, where my husband's employer, Kellogg Plant Services, had sent him to work in

connection with two oil refinery maintenance contracts.  During the two and one half

years prior to August 2, 1990, my husband and I were able to move freely about Kuwait

and could have left the country at any time.

3.     This situation changed on August 2, 1990, when Iraqi armed forces

invaded Kuwait.  Following the invasion, Saddam Hussein, the President of the Republic

of Iraq, issued an order prohibiting all U.S. citizens from leaving either Iraq or Kuwait.

Pursuant to President Hussein's directive, all American citizens were required to

FILED

JUN 2 8 2001

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

congregate at specified locations in Kuwait and Iraq and were detained at those and other locations. American citizens who were found outside these locations were subject to seizure by Iraqi security forces and forced relocation to military installations and other strategic sites where they were detained as "human shields" in order to prevent allied air attack.

4.     On the day of the invasion, my husband and I were at our apartment in Kuwait City, where we remained for approximately ten days until we were advised by our neighbor that Iraqi forces were about to conduct a search of the building. Upon receiving that information, we left our apartment and relocated to a friend's apartment, which was located in a much larger building where it was less likely that we would be discovered by Iraqi authorities. At about the same time, we heard of the Iraqi directive ordering American and other foreign citizens to report to various hotels throughout Kuwait City. We learned through Voice of America, however, that the U.S. Government was advising U.S. Citizens to disobey the Iraqi order. Fearing that we might be captured and used as "human shields" or even killed by Iraqi authorities, we heeded our government's advice and remained in hiding.

5.     At the end of August, we received word that the Iraqi Government had issued an order authorizing the departure of women and children from the United States and other Western countries. Fearing that I might never see my husband alive again if I left without him, I felt that I had no choice but to remain with him in Kuwait. Accordingly, we stayed at our friend's apartment until November 28, 1990, when, with the assistance of some Danish friends, we fled to the Danish Embassy in Baghdad. Shortly after arriving at the Danish Embassy, we were met by a U.S. Embassy official

who brought us to the U.S. Ambassador's residence, where we remained for the duration of the crisis.

6.      My husband and I were held hostage in Kuwait and Iraq until approximately December 8, 1990, when, pursuant to a later order by Saddam Hussein, we were permitted to leave Iraq and return to the United States.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on June <u>21</u>, 2001.

_Khadijah S. Mills_
Khadijah S. Mills

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Mel J. and Vivian C. Hill, et al.,      ) | |
|                ) | |
|           Plaintiffs,    ) | |
|                ) | Civ. Action No. 1:99CV03346 (TPJ) |
|          v.        ) | |
|                ) | |
| Republic of Iraq and Saddam Hussein in his official ) | |
| capacity as President of the Republic of Iraq,    ) | |
|                ) | |
|          Defendants.    ) | |

## DECLARATION OF WILLIAM E. MILLS

William E. Mills, under penalty of perjury, declares:

1.     I live at 1212 Wood Hollow Drive, Apt. 15202, Houston, Texas, 77057.  I was born in Baltimore, Maryland on June 11, 1928.

2.     In February 1988, my wife, Khadijah S. Mills, and I arrived in Kuwait, where I was employed as administrative manager for Kellogg Plant Services in connection with two oil refinery maintenance contracts with the Kuwaiti Oil Company.  During the two and one half years prior to August 2, 1990, my wife and I were able to move freely about Kuwait and could have left the country at any time.

3.     This situation changed on August 2, 1990, when Iraqi armed forces invaded Kuwait.  Following the invasion, Saddam Hussein, the President of the Republic of Iraq, issued an order prohibiting all U.S. citizens from leaving either Iraq or Kuwait.  Pursuant to President Hussein's directive, all American citizens were required to congregate at specified locations in Kuwait and Iraq and were detained at those and other locations.  American citizens who were found outside these locations were subject to seizure by Iraqi security forces and

FILED

JUN 2 8 2001

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

forced relocation to military installations and other strategic sites where they were detained as "human shields" in order to prevent allied air attack.

4.      On the day of the invasion, I was with my wife at our apartment in Kuwait City, where we remained for approximately ten days until we were advised by our neighbor that Iraqi forces were about to conduct a search of the building. Upon receiving that information, we left our apartment and relocated to my friend's apartment, which was located in a much larger building and where it was less likely that we would be discovered by Iraqi authorities. At about the same time, we heard of the Iraqi directive ordering American and other foreign citizens to report to various hotels throughout Kuwait City. We learned through Voice of America, however, that the U.S. Government was advising U.S. Citizens to disobey the Iraqi order. Fearing that we might be captured and used as "human shields" or even killed by Iraqi authorities, we heeded our government's advice and remained in hiding.

5.      My wife and I stayed at our friend's apartment until November 28, 1990, when, with the assistance of some Danish friends, we fled to the Danish Embassy in Baghdad. Shortly after arriving at the Danish Embassy, we were met by a U.S. Embassy official who brought us to the U.S. Ambassador's residence, where we remained for the duration of the crisis.

6.      My wife and I were held hostage in Kuwait and Iraq until approximately December 8, 1990, when, pursuant to a later order by Saddam Hussein, we were permitted to leave Iraq and return to the United States.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 2_(, 2001.

_William E. Mills_
William E. Mills

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

Mel J. and Vivian C. Hill, et al.,                    )
                                                       )
                    Plaintiffs,                        )
                                                       )    Civ. Action No. 1:99CV03346 (TPJ)
              v.                                        )
                                                       )
Republic of Iraq and Saddam Hussein in his official )
capacity as President of the Republic of Iraq,         )
                                                       )
                    Defendants.                        )
                                                       )

# DECLARATION OF BILLIE E. NELSON

Billie E. Nelson, under penalty of perjury, declares:

1.      I live at 18334 Jayhawk Dr. in Penn Valley, California 95946.  I was born in Orient, Iowa on June 20, 1934.

2.      In February 1990, my wife, Jacqueline Nelson, and I arrived in Kuwait, where my employer – Daniel, Mann, Johnson & Mendenhahl – had assigned me to serve as director of administration on a project for the University of Kuwait Development Program. During the six-month period between my arrival in Kuwait and the Iraqi invasion on August 2, my wife and I were able to move freely about the country and could have left Kuwait at anytime. This situation changed on August 2, 1990, when Iraqi armed forces invaded Kuwait.

3.      Shortly after the invasion, Saddam Hussein, the President of the Republic of Iraq, issued an order prohibiting all U.S. citizens from leaving either Iraq or Kuwait.  Pursuant to President Hussein's directive, all American citizens were required to congregate at specified locations in Kuwait and Iraq and were detained at those and other locations.  American citizens who were found outside these locations were subject to seizure by Iraqi security forces and

FILED
JUN 8 2001
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

forced relocation to military installations and other strategic sites where they were detained as "human shields" in order to prevent allied air attack.

      4.     On the day of the invasion, my wife and I were at home in our apartment in Kuwait City.  Fearing that we might be killed or captured by Iraqi forces and used as "human shields," we ignored Hussein's command that we report to the Iraqi authorities and, instead, hid in our apartment until September 4.  On that day, Iraq forces broke down the door to our apartment, took us into custody and brought us to the Regency Hotel, where we were detained for the next few days.

      5.     On or about September 6, my wife and I, along with seven other American families, were driven to Baghdad by bus and taken to the Al-Mansour-Melia Hotel.  Three days later, on September 9, my wife was permitted to leave the country in accordance with President Hussein's directive authorizing the release of American and foreign women and children.  On that same day, I was taken to what was either a chemical weapons or nuclear plant located west of Mosel, where I was detained for about one month as a "human shield" to prevent allied air attack.  On approximately September 30, I was relocated from that facility to a munitions plant some 40 miles south of Baghdad, where I was held as a "human shield" for the duration of the crisis.

      .    6.     I was held hostage in Iraq until December 8, 1990, when, pursuant to a later order by Saddam Hussein, I was permitted to leave Iraq and return to the United States.

     I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 13, 2001.

_Billie E. Nelson_

Billie Nelson

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| Mel J. and Vivian C. Hill, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Civ. Action No. 1:99CV03346 (TPJ) |
| v. | ) | |
| | ) | |
| Republic of Iraq and Saddam Hussein in his official | ) | |
| capacity as President of the Republic of Iraq, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## DECLARATION OF BILL F. RODEBUSH

Bill F. Rodebush, under penalty of perjury, declares:

1.     I reside in McAlester, Oklahoma.  I was born in Konawa, Oklahoma on January 31, 1937.

2.     On August 2, 1990, Iraqi forces invaded Kuwait.  During the six weeks preceding the invasion, I had been working in Kuwait as an engineer for Dresser Industries assigned to a project at the Kuwait Drilling Companies Camp.

3.     Shortly after the invasion, Saddam Hussein, the President of the Republic of Iraq, issued an order prohibiting all U.S. citizens from leaving either Iraq or Kuwait.  Pursuant to President Hussein's directive, all American citizens were required to congregate at specified locations in Kuwait and Iraq and were confined to those and other locations.  American citizens who were found outside these locations were subject to both seizure by Iraqi security forces, and forcibly relocated to military installations and other strategic sites where they were detained as "human shields" in order to prevent allied air attack.

4.     On the morning of the invasion, Iraqi forces seized me at gunpoint at the Kuwait Drilling Companies Rig No. 145 in northeast Kuwait and transported me by bus to a

FILED
JUN 2 8 2001
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

prisoner of war camp in southern Iraq and, later that same day, to a military camp, where I was detained overnight. The next day, I was taken to the Sheraton Hotel in Bashra. After spending the evening at that hotel, I was loaded onto a military plane and flown to Baghdad on August 4. Upon arrival in Baghdad, I was brought to the Al-Rasheed Hotel and confined there for the next 12 days. I was subsequently taken to several strategic sites where I was used as a "human shield" to deter allied air attack. The first of these sites was a chemical facility in Al' Quaim near the Syrian border, where I was held from August 16 to August 29. I was next taken to a scud missile factory near Taji. On September 25, I was relocated to an ammunition factory located south of Baghdad, where I was confined for more than two months. On December 8, I was brought back to Baghdad and taken to the Monsour Mellia Hotel.

5.    I was held hostage in Iraq until approximately December 8, 1990, when, pursuant to an order of Saddam Hussein, I was permitted to leave Iraq and return to the United States.

6.    During the time of my confinement in Iraq, I was married to Birthe Rodebush. My wife was born on November 18, 1935 in Denmark and became a naturalized U.S. citizen on July 7, 1972. During the period that I was held hostage in Iraq, my wife lived in constant fear for my safety and well-being and suffered from extreme emotional distress, which caused her to become afflicted with ulcerative colitis. My wife died on April 21, 1999.

I declare under penalty of perjury that the foregoing is true and correct. Executed on April 27, 2001.

Bill F. Rodebush



# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

Mel J. and Vivian C. Hill, et al.,                )
                                                  )
                    Plaintiffs,                   )
                                                  )        Civ. Action No. 1:99CV03346 (TPJ)
          v.                                      )
                                                  )
Republic of Iraq and Saddam Hussein in his official )
capacity as President of the Republic of Iraq,    )
                                                  )
                    Defendants.                   )
                                                  )

# DECLARATION OF JERRY WILLIS

Jerry Willis, under penalty of perjury, declares:

1.      I live at Route 5, Box 675 in Gardiner, Maine, 04345.  I was born in Johnson City, Tennessee on February 19, 1949.

2.      In June 1987, I was a Chief Warrant Officer in the U.S. Army and arrived in Kuwait on assignment as a technical adviser to the Kuwaiti Ministry of Defense.  In 1989, I retired from the army, but remained in Kuwait with my wife, Debby Willis, working directly for the Ministry of Defense.

3.      From the moment we arrived in Kuwait until the August 1990 Iraqi invasion of Kuwait, my wife and I were able to move freely about the country and could have left Kuwait at anytime.  This situation changed on August 2, 1990, when Iraqi armed forces invaded Kuwait.

4.      Shortly after the invasion, Saddam Hussein, the President of the Republic of Iraq, issued an order prohibiting all U.S. citizens from leaving either Iraq or Kuwait.  Pursuant to President Hussein's directive, all American citizens were required to congregate in specified

FILED

JUN 8 2001

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

locations in Kuwait and Iraq and were detained at those and other locations. American citizens who were found outside these locations were subject to seizure by Iraqi security forces and forcibly relocated to military installations and other strategic sites, where they were detained as "human shields" in order to prevent allied air attack.

5.     On the day of the invasion, my wife and I were at home in our apartment in Kuwait City. Within a day or two, we received a call from a U.S. Embassy official who advised us to seek refuge at the Embassy compound, which we did. We remained at the U.S. Embassy until approximately August 15, when we left with plans to flee the country. After spending one evening at a friend's house in Kuwait City, we set off by car en route to Saudi Arabia. As we were driving through the desert, we were stopped by Iraqi soldiers who took us into custody, confiscated our belongings and brought us to the Regency Hotel in downtown Kuwait City. After being held overnight at the hotel, we were taken by bus to Baghdad, where we were detained at the Al-Mansour Hotel.

6.     Several days later, my wife and I were separated. My wife remained at the hotel until her release on September 1 and I was transported to a dam on the Tigris River. For the next two months, I was detained at the dam and used as a "human shield" to prevent allied air attack. In mid-October, I was transported to another dam on the Euphrates River, where I was again detained as a "human shield."

7.     I was held hostage in Iraq until approximately December 9, 1990, when, pursuant to a later order by Saddam Hussein, I was permitted to leave Iraq and return to the United States.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on June _12_, 2001.


_Jerry Willis_
Jerry Willis

## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF COLUMBIA

| | |
|---|---|
| Mel J. and Vivian C. Hill, et al., )<br><br>Plaintiffs, )<br><br>v. )<br><br>Republic of Iraq and Saddam Hussein in his official )<br>capacity as President of the Republic of Iraq, )<br><br>Defendants. )<br>_____ ) | Civ. Action No. 1:99CV03346 (TPJ) |

## DECLARATION OF BHARATI J. BHATT

Bharati J. Bhatt, under penalty of perjury, declares:

1.    I live at CASA XS, Flat DG-1, 43/2 Manapakkam Road, Manapakkam,

Chennai 600116, India. I was born on August 12, 1950 in Burma. I became a naturalized U.S.

citizen on February 16, 1990.

2 ∅.    On August 2, 1990 — the day that Iraqi forces invaded Kuwait — my then

and current husband, Jan Bhatt, was on board a British Airways flight bound for Kuwait. As

soon as the flight landed he was seized by Iraqi troops, detained in Kuwait city for 5 days, and

then forcibly relocated to Iraq. He was held hostage at certain strategic locations where he was

used as a "human shield" to prevent allied air attack, until he was finally permitted to leave Iraq

on approximately December 9, 1990.  The details relating to my husband's hostage-taking are

accurately set forth in paragraphs 2 through 5 of his declaration, executed on May 24, 2001.

**FILED**

**JUN 2 8 2001**

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

3 1.     During the period that my husband was held hostage, I lived in constant fear for his safety and well-being and suffered from extreme emotional distress.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 24, 2001.

*Bharati J. Bhatt*

Bharati J. Bhatt



## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF COLUMBIA

| | |
|---|---|
| Mel J. and Vivian C. Hill, et al., ) | |
| ) | |
| Plaintiffs, ) | Civ. Action No. 1:99CV03346 (TPJ) |
| ) | |
| v. ) | |
| ) | |
| Republic of Iraq and Saddam Hussein in his official ) | |
| capacity as President of the Republic of Iraq, ) | |
| ) | |
| Defendants. ) | |

## DECLARATION OF LORETTA M. LAWSON

Loretta M. Lawson, under penalty of perjury, declares:

1.    I reside at 246 Elkins Lake, Huntsville, TX, 77340.

2.    I was born in Texas on June 20, 1940.

3.    In August 1990, my then and current husband, Allan L. Lawson, was

working in Kuwait as a contact drilling fluids engineer for Dresser Industries. On August 2, 1990

– the day that Iraqi forces invaded Kuwait - he was taken hostage by the Iraqi regime, forcibly

relocated to Iraq, and detained at various strategic locations where he was used as a "human

shield" to prevent allied air attack, until he was finally permitted to leave Iraq on December 7,

1990.  The details related to my husband's hostage-taking are accurately set forth in paragraphs 3

through 5 of his declaration, executed on May 14, 2001.



FILED

JUN 2 8 2001

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

4.    During the period that my husband was held hostage in Kuwait and Iraq, I lived in constant fear for his safety and well-being, and suffered from extreme emotional distress.

I declare under penalty of perjury that the foregoing is true and correct. Executed on May 14, 2001.

*Loretta M. Lawson*

Loretta M. Lawson



**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| Mel J. and Vivian C. Hill, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | Civ. Action No. 1:99CV03346 (TPJ) |
| | ) | |
| v. | ) | |
| | ) | |
| Republic of Iraq and Saddam Hussein in his official | ) | |
| capacity as President of the Republic of Iraq, | ) | |
| | ) | |
| Defendants. | ) | |

**DECLARATION OF BETTY JANE SEAGO**

Betty Jane Seago, under penalty of perjury, declares:

1.      I live at 823 Ash Grove Lane, DeSoto, Texas, 75115.   I was born in El Paso, Texas on July 21, 1945.

2.      In August 1990, my then and current husband, Guy Olan Seago, was living and working in Kuwait.   On August 2, 1990, Iraqi forces invaded Kuwait.   My husband was trapped in that country, where he was taken hostage by the Iraqi regime and forcibly relocated to Iraq.   He was the brought to a strategic site, where he was detained and used as a "human shield" to prevent allied air attack, until he was finally permitted to leave Iraq on December 9, 1990.   The details relating to my husband's hostage-taking are accurately set forth in paragraphs 3 through 7 of his declaration, executed on June *12*, 2001.



FILED

JUN 2 8 2001

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

3.    During the period that my husband was held hostage, I lived in constant fear for his safety and well-being and suffered from extreme emotional distress.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 12, 2001.

_Betty Jane Seago_
Betty Jane Seago



ALL-STATE LEGAL SUPPLY CO.   1-800-222-0510   ED 11-4C

## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF COLUMBIA

Mel J. and Vivian C. Hill, et al.,     )
     )
     )
          Plaintiffs,     )
     )     Civ. Action No. 1:99CV03346 (TPJ)
     )
          v.     )
     )
Republic of Iraq and Saddam Hussein in his official )
capacity as President of the Republic of Iraq,     )
     )
          Defendants.     )
     )

## DECLARATION OF WILDA CARR

Wilda Carr, under penalty of perjury, declares:

1.     I reside at 1186 Starkey Creek Trail, Marshall, Texas, 75672. I was born on November 18, 1943 in Lake Charles, Louisiana.

2.     In June 1990, I arrived in Kuwait, where I joined my husband, Gary Carr, who had been sent there six months earlier by his employer, Oge Consulting, to work on a drilling project with the Kuwaiti Oil Company.

3.     From the moment I arrived in Kuwait until shortly before the August 1990 Iraqi invasion, I was able to move freely about the country and could have left at any time. This situation changed on August 2, 1990, when Iraqi armed forces invaded Kuwait.

4.     On August 2, 1990, I was alone in my apartment in Kuwait City, when I received a call from my husband who was working on an oil rig near the Kuwaiti border. My husband informed me that he was witnessing an invasion of the country and advised me to leave the country if I could. Accordingly, on August 3, I attempted to escape the country by car in a convoy with about a dozen other American citizens. As we drove through the desert to Saudi



FILED
JUN 2 8 2001
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

2

Arabia, we were stopped by Iraqi soldiers who informed us we could not leave the country and instructed us to return to our homes. We did as we were instructed, but after discussing the matter further, we made a second escape attempt later that day and this time successfully reached Saudi Arabia.

5.    Unfortunately, however, my husband, Gary Carr was seized by Iraqi forces on the day of the invasion, forcibly relocated to Iraq, and detained at various strategic locations where he was used as a "human shield" to prevent allied air attack, until he was finally permitted to leave Iraq on December 9, 1990. The details relating to my husband's hostage-taking are accurately set forth in paragraph 5 of his declaration, executed on June 22, 2001.

6.    During the period that my husband was held hostage in Kuwait and Iraq, I lived in constant fear for his safety and well-being and suffered from extreme emotional distress.


I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 22, 2001.

Wilda Carr



ALL-STATE LEGAL SUPPLY CO.  1-800-222-0510  ED11-AC   RECYCLED

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Mel J. and Vivian C. Hill, et al.,            )
                                              )
                    Plaintiffs,               )
                                              )        Civ. Action No. 1:99CV03346 (TPJ)
        v.                                    )
                                              )
Republic of Iraq and Saddam Hussein in his official )
capacity as President of the Republic of Iraq, )
                                              )
                    Defendants.               )
                                              )

DECLARATION OF MARGARET M. JESSE

Margaret M. Jesse, under penalty of perjury, declares:

1.      I live in 45 Beacon Bay in Lakemoor, Illinois, 60050.  I was born on December 5, 1934 in Buffalo, New York.

2.      My husband, Clyde Jesse, and I arrived in Kuwait in December 1987, where my husband was employed as a senior logistics engineer with the Kuwaiti Ministry of Defense.  During the two and a half that we lived in Kuwait prior to August 2, we could move freely about the country and could have left at any time.

3.      This situation changed on August 2, 1990, when Iraqi forces invaded Kuwait.  Shortly thereafter, Saddam Hussein, the President of the Republic of Iraq, issued an order prohibiting all U.S. citizens from leaving either Iraq or Kuwait.  Pursuant to President Hussein's directive, all American citizens were required to congregate at specified locations in Kuwait and Iraq, and were detained at those and other locations.  American citizens who were found outside these locations were subject to seizure by Iraqi security forces and were forcibly

FILED

JUN 28 2001

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

relocated to military installations and other strategic sites, where they were detained as "human shields" in order to prevent allied air attack.

4.     Within hours of the invasion, Iraqi forces took up positions around the Messella Beach Hotel, where my husband and I were living in Kuwait City. For the next two days, Iraqi forces confined us to our apartment in the hotel. Then, on August 4, they transported us via bus to Basra and, from there, by overnight train to Baghdad, where we were held at the Al-Rasheed hotel for about ten days. Subsequently, in mid-August, we were bussed to a chemical plant in Al'Qaim where we were detained as "human shields."

5.     I was held hostage in Iraq until approximately September 1, 1990, when, pursuant to an order by Saddam Hussein, I was permitted to leave Iraq and return to the United States. My husband was detained in Al'Qaim until approximately November 29.

6.     During the period that I was separated from my husband, I lived in constant fear for his safety and well-being and suffered from extreme emotional distress.

I declare under penalty of perjury that the foregoing is true and correct. Executed on June _11_, 2001.

Margaret M. Jesse
Margaret M. Jesse



ALL-STATE LEGAL SUPPLY CO.   1-800-222-0510   E011-AC   RECYCLED

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

Mel J. and Vivian C. Hill, et al.,      )
                                   )
                    Plaintiffs,      )
                                   )     Civ. Action No. 1:99CV03346 (TPJ)
                    v.            )
                                   )
Republic of Iraq and Saddam Hussein in his official )
capacity as President of the Republic of Iraq,    )
                                   )
                  Defendants.    )
                                   )

# DECLARATION OF JACQUELINE NELSON

Jacqueline Nelson, under penalty of perjury, declares:

1.     I live at 18334 Jayhawk Dr. in Penn Valley, California 95946.  I was born in Hermosa Beach, California on September 25, 1935.

2.     In February 1990, my husband, Billie E. Nelson, and I arrived in Kuwait, where my husband had been sent by his employer – Daniel, Mann, Johnson & Mendenhahl – to work on a project for the University of Kuwait Development Program.  During the six-month period between our arrival in Kuwait and the Iraqi invasion on August 2, my husband and I were able to move freely about the country and could have left Kuwait at anytime.  This situation changed on August 2, 1990, when Iraqi armed forces invaded Kuwait.

3.     Shortly after the invasion, Saddam Hussein, the President of the Republic of Iraq, issued an order prohibiting all U.S. citizens from leaving either Iraq or Kuwait.  Pursuant to President Hussein's directive, all American citizens were required to congregate at specified locations in Kuwait and Iraq and were detained at those and other locations.  American citizens who were found outside these locations were subject to seizure by Iraqi security forces and were

FILED
JUN 2 8 2001
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

forcibly relocated to military installations and other strategic sites where they were detained as "human shields" in order to prevent allied air attack.

       4.      On the day of the invasion, my husband and I were at home in our apartment in Kuwait City. Fearing that we might be killed or captured by Iraqi forces and used as "human shields," we ignored Hussein's command that we report to the Iraqi authorities and, instead, hid in our apartment until September 4. On that day, Iraqi soldiers broke down the door to our apartment, took us into custody and brought us to the Regency Hotel, where we were detained for the next few days.

       5.      On or about September 6, my husband and I, along with seven other American families, were transported to Baghdad by bus and taken to the Al-Mansour-Melia Hotel. Three days later, on September 9, I was permitted to leave the country in accordance with President Hussein's directive authorizing the release of American and foreign women and children.

       6.      Immediately after my departure from Iraq, my husband was forcibly relocated to and detained at certain sites where he was used as a "human shield" to prevent allied air attack, until he was finally allowed to leave Iraq on December 8. The details relating to my husband's detention following my departure from Iraq are accurately set forth in paragraph 5 of his declaration, executed on June _13_, 2001.

7.     During the period after my return to the United States and until my husband was allowed to return home, I lived in constant fear for his safety and well-being and suffered from extreme emotional distress.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 13, 2001.

Jacqueline Nelson



ALL-STATE® LEGAL 800-222-0510   ED11-AC   RECYCLED



# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

Mel J. and Vivian C. Hill, et al.,    )
    )
              Plaintiffs,    )
    )    Civ. Action No. 1:99CV03346 (TPJ)
              v.    )
    )
Republic of Iraq and Saddam Hussein in his official )
capacity as President of the Republic of Iraq,    )
    )
              Defendants.    )
    )

## DECLARATION OF DEBBY WILLIS

Debby Willis, under penalty of perjury, declares:

1.    I live at Route 5, Box 675 in Gardiner, Maine, 04345. I was born in Dover-Foxcroft, Maine on March 27, 1958.

2.    In June 1987, I arrived in Kuwait with my husband, Jerry Willis, who was a Chief Warrant Officer in the U.S. Army assigned as a technical adviser to the Kuwaiti Ministry of Defense. Although my husband retired from the army in 1989, we remained in Kuwait where I had obtained a position working as an attorney with the Kuwaiti law firm of Al-Ayoub & Al-Majid and where my husband had obtained a position working directly for the Ministry of Defense.

3.    From the moment we arrived in Kuwait until the August 1990 Iraqi invasion of Kuwait, my husband and I were able to move freely about the country and could have left Kuwait at anytime. This situation changed on August 2, 1990, when Iraqi armed forces invaded Kuwait.



FILED

JUN 2 8 2001

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

4.      Shortly after the invasion, Saddam Hussein, the President of the Republic of Iraq, issued an order prohibiting all U.S. citizens from leaving either Iraq or Kuwait.  Pursuant to President Hussein's directive, all American citizens were required to congregate at specified locations in Kuwait and Iraq and were detained at those and other locations.  American citizens who were found outside these locations were subject to seizure by Iraqi security forces and were forcibly relocated to military installations and other strategic sites where they were detained as "human shields" in order to prevent allied air attack.

5.      On the day of the invasion, my husband and I were at home in our apartment in Kuwait City.  Within a day or two, we received a call from a U.S. Embassy official who advised us to seek refuge at the Embassy compound, which we did.  We remained at the U.S. Embassy until approximately August 15, when we left with plans to flee the country.  After spending one evening at a friend's house in Kuwait City, we set off by car en route to Saudi Arabia.  As we were driving through the desert, we were stopped by Iraqi soldiers who took us into custody, confiscated our belongings and brought us to the Regency Hotel in downtown Kuwait City.  After being held overnight at the hotel, we were taken by bus to Baghdad, where we were detained at the Al-Mansour Hotel.

6.      Several days later, my husband was separated from me and transported to a dam on the Tigris River where he was used as a "human shield" to prevent allied air attack. I remained at the hotel where I was confined until September 1, when, pursuant to orders from President Hussein, I was permitted to leave Iraq and return to the United States.  My husband, however, remained a hostage in Iraq until December 9.  The details of his confinement in Iraq during the period after my departure from the country are set forth in paragraph 6 of his declaration, executed on June 12 2001.

7.    During the period in which my husband was held hostage in Iraq following our separation from each other, I lived in constant fear for his safety and well-being and suffered from extreme emotional distress.

I declare under penalty of perjury that the foregoing is true and correct. Executed on June 2, 2001.


Debby Willis